128 F.3d 125
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE PARCEL OF PROPERTY LOCATED AT 414 KINGS HIGHWAY,
FAIRFIELD, CONNECTICUT, Defendant,
People's Bank, Claimant-Appellant,
Francisco L. Aguilar, Claimant-Appellee.
 No. 96-6292.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 22, 1997.
Decided Nov. 10, 1997.
 
 James T. Shearin, Bridgeport, CT (Andrew J. McDonald, Pullman & Comley, Bridgeport, CT, on the brief), for Claimant-Appellant.
 Carl J. Schuman, Asst. U.S. Atty., Hartford, CT (Christopher F. Droney, U.S. Atty., John B. Hughes, Asst. U.S. Atty., Hartford, CT, on the brief), for Plaintiff-Appellee.
 Robert Sullivan, Westport, CT, for Claimant-Appellee.
 Before: NEWMAN, ALTIMARI, and CALABRESI, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This forfeiture case requires interpretation of a stipulation entered into between the Government and the mortgagee of the seized res. People's Bank (the "Bank") appeals from the October 25, 1996, judgment of the District Court for the District of Connecticut (Ellen Bree Burns, Judge), awarding claimant-appellee Francisco Aguilar the proceeds of the interlocutory sale of the seized property. We reverse.
 
 Background
 
 2
 In 1991, the Government seized various properties owned by Aguilar in connection with his arrest for drug trafficking offenses.[1] Separate forfeiture actions were brought against each property pursuant to 21 U.S.C. § 881(a)(6) (1994). Among the properties was a parcel of land located at 414 Kings Highway, Fairfield, Connecticut (the "Property"), the subject of the present litigation. The Bank held mortgages on the Property, as well as on two other properties owned by Aguilar.
 
 
 3
 The Bank filed a Notice of Claim, pursuant to the "innocent owner" provision of section 881(a)(6), asserting an interest in the Property as mortgagee in the amount of $34,615.59 plus accrued interest. The Government then successfully moved for an immediate sale of the Property, alleging likely deterioration. The District Court ordered the Bank to release its mortgage, and required the net proceeds of the sale to be deposited by the United States Marshal into the Seized Asset Deposit Fund Account (the "Fund"), pending determination of the Government's forfeiture action and the claims raised by various parties. The Bank released its mortgage on the Property. The sale yielded net proceeds of $42,309.85.
 
 
 4
 Thereafter, while the Government's motion for summary judgment to extinguish Aguilar's interest was pending, the Bank and the Government entered into a Stipulation, which included the following provisions:
 
 
 5
 2. That the Claimant, People's Bank, consents to the entry of a Decree of Forfeiture, forfeiting all interests in [the Property] and the proceeds of the interlocutory sale thereof, to the United States of America to be disposed of according to law.
 
 
 6
 3. That the Claimant, People's Bank, agrees to accept in full satisfaction of its claim in the instant case, ... and its claims in [two other actions seeking forfeiture of Aguilar's properties in which the Bank held mortgages] ..., the total sum of $125,000 to be paid from the net proceeds of the interlocutory sales of the above-named properties. Such sum shall be paid upon the final resolution of the above-referenced cases.
 
 
 7
 See July 3, 1996, Ruling of District Court at 2. The Stipulation was "so ordered" by the District Court.
 
 
 8
 Thereafter, the Government, apparently doubting its ability to prevail in the forfeiture action respecting the Property, moved for voluntary dismissal. See Fed.R.Civ.P. 41(a)(2). Since Aguilar and the Bank did not stipulate in advance to voluntary dismissal, the Government requested that the Court grant or deny the motion upon such terms and conditions as the Court deemed proper, noting in particular the need for the Court to disburse the $43,600 in net proceeds (including accrued interest) on deposit in the Fund. Apprehending dismissal without prejudice, Aguilar objected to dismissal of the forfeiture action, and moved for summary judgment. The Bank consented to dismissal, stating that "we do not object to the government's motion for voluntary dismissal of the action but we do request that, as part of the terms of that dismissal, that the Court not jeopardize or in any other fashion prejudice the bank's ... claim." March 7, 1996 transcript at 9-10. The District Court dismissed the action with prejudice, and scheduled a hearing to determine the disposition of the proceeds from the sale of the Property. Before the hearing, the Bank moved for disbursal to it of the proceeds from the sale of the Property, plus interest--a total that by then was exceeded by the total of its mortgage balance plus accrued interest.
 
 
 9
 The District Court denied the Bank's motion for disbursal, ruling that the Bank, in the Stipulation with the Government, had "forfeited 'all interests in [the Property], and the proceeds of the interlocutory sale thereof.' " July 3, 1996, Ruling of District Court at 3 (emphasis in original). Thereafter, the Court determined that Aguilar was entitled to the proceeds on deposit in the Fund and entered judgment in his favor.
 
 Discussion
 
 10
 Though the forfeiture action has been dismissed, the Court retained authority to make an appropriate disposition of the proceeds from the sale of the Property. See 19 U.S.C. § 1612(a) (when interlocutory sale ordered, "the proceeds thereof shall be held subject to claims of parties in interest to the same extent as the [property] so sold would have been subject to such claim");[2] see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 394-95, 110 S.Ct. 2447, 2455, 110 L.Ed.2d 359 (1990) (federal court retains jurisdiction over collateral issues after action is dismissed pursuant to Rule 41). The Bank primarily urges that the District Court's disposition of the proceeds was based on an erroneous interpretation of the Stipulation. We agree.
 
 
 11
 The construction of the text of a contract is reviewed de novo. See, e.g., Bellefonte Reinsurance Co. v. Aetna Casualty and Surety Co., 903 F.2d 910, 912 (2d Cir.1990) ("The proper standard for appellate review of a pure textual construction by the district court, whatever the procedural posture of the case, is de novo.") (citations omitted). The District Court construed paragraph 2 of the Stipulation to be a forfeiture of the Bank's right to the Property and the proceeds and construed paragraph 3 to mean that the Bank would receive $125,000 only if the Government had prevailed in the forfeiture action, which was dismissed. The Court assumed for the argument that paragraph 3 could be interpreted to permit the Bank to receive the sale proceeds despite dismissal of the forfeiture action, but rejected such an interpretation, invoking the principle that ambiguities in documents are construed against the drafter.
 
 
 12
 We conclude that paragraphs 2 and 3 must be read together, and that both contemplate a relinquishment of the Bank's claim and substitution of a payment of $125,000 from the sale of all three properties only in the event that a decree of forfeiture was entered. That is the interpretation urged by both of the parties to the Stipulation--the Bank and the Government. In paragraph 2, the Bank did not forfeit its interest but only consented to "the entry of a Decree of Forfeiture," an event that never occurred because the forfeiture action was dismissed. In essence, a decree of forfeiture was a condition precedent to the substitution of a $125,000 payment for the Bank's interest in the three properties. Absent fulfillment of that condition, the Bank retained its claim to the sale proceeds, a claim it obtained when the Court ordered it to release its mortgage in exchange for the right to collect from the sale proceeds. The canon of construing ambiguous documents against the drafter is inapplicable, both because the document is sufficiently clear and because that doctrine is normally invoked for the benefit of the other party to the document, which in this case agrees with the Bank's construction. We need not consider what effect the canon might have if third parties had acted in reasonable reliance on ambiguous language in the Stipulation.
 
 
 13
 Aguilar contends that even if the Bank's relinquishment of its claim was conditioned upon the entry of a decree of forfeiture, that condition was satisfied when the Court "so ordered" the Stipulation. We disagree. A "decree of forfeiture" is a declaration made by the Court upon the Government's successful completion of a forfeiture action, vesting the Government's title to the seized res. See United States v. 92 Buena Vista Avenue, 507 U.S. 111, 125, 129, 113 S.Ct. 1126, 1135, 1137-38, 122 L.Ed.2d 469 (1993) (plurality opinion). Until the Government succeeds, the Court has no power to issue a decree of forfeiture. See id. at 129, 113 S.Ct. at 1137-38. Because this forfeiture action was dismissed prior to a determination on the merits, the Court neither did--nor could have--issued a decree of forfeiture.
 
 Conclusion
 
 14
 We reverse the judgment of the District Court, and remand for a determination of an appropriate disposition of the proceeds, consistent with this opinion. Though it appears that the Bank is entitled to the entire current amount of the sale proceeds, plus accrued interest, in the Fund, we leave it to the District Court to consider any issues that might remain concerning the Bank's entitlement to the sale proceeds.
 
 
 
 [1]
 Aguilar was ultimately convicted of various narcotics crimes, and sentenced to 480 months' imprisonment. See United States v. Tracy, 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence)
 
 
 [2]
 This section, explicitly dealing with interlocutory sales pursuant to forfeitures by the Customs Service, applies as well to forfeiture actions, such as the one giving rise to the instant appeal, brought pursuant to 21 U.S.C. § 881. See 21 U.S.C. § 881(d)